**phelps**

Phelps Dunbar LLP
II City Plaza
400 Convention Street, Suite 1100
Baton Rouge, LA 70802
225 346 0285

April 21, 2026

47932-0001

R. Andrew Patty II
Partner
Admitted in Louisiana, Texas, North
Carolina and District of Columbia
drew.patty@phelps.com
Direct  225 376 0284

*FRE 408 COMMUNICATION – NOT OTHERWISE ADMISSIBLE*

*via email to: a.blandeburgo@mss-pllc.com*

Alexa T. Blandeburgo
Meister Seelig & Schuster
125 Park Avenue, 7th Floor
New York, NY  10017

Re:    Bubble Beauty Inc's Allegations in Your Demand Letter of April 14, 2026

Dear Ms. Blandeburgo:

This firm represents 1135 Skincare, LLC ("1135"). We have been made aware of your demand letter of April 14, 2026, to 1135, in which you convey Bubble Beauty, Inc.'s allegations of trade dress infringement against our client.

1135 takes the intellectual property rights of others very seriously, and it has worked very hard to develop and protect a unique and distinctive brand and style that sets its products apart from those of others and identifies a single source. This can be witnessed by 1135's distinctive product package coloring that is used throughout its product lines, and its distinctive SAINT CREWE brand with its color coordination with that product package coloring.

1135 also takes your letter's allegations seriously and has closely reviewed them and your arguments seeking to establish the basis of a claim for trade dress infringement. However, for at least the reasons below, 1135 vigorously disagrees with your assertions, as well as the conclusions your client appears to have drawn from allegations set out in your letter.

No Protectable Trade Dress

At the outset, we note that to establish a trade dress infringement claim, Bubble Beauty, Inc. ("Bubble") must first establish that the asserted trade dress is both *non-functional* and *distinctive*. The Supreme Court has squarely held that unregistered trade dress is protectable only upon a showing of acquired secondary meaning. *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 210–16 (2000).

Where, as here, the asserted trade dress consists of ordinary packaging features and commonplace color schemes, courts require proof of acquired distinctiveness (secondary meaning)—that is, evidence that consumers associate the packaging itself, standing alone, with a single source. *Id.* at 211. Likewise, the U.S. Supreme Court has noted that "for one category

Alabama  Florida  Louisiana  Mississippi  North Carolina  Tennessee  Texas  London          phelps.com

**EXHIBIT**

**B**

PD.61578539.4

Alexa T. Blandeburgo
April 21, 2026
Page 2

of mark–colors–we have held that no mark can ever be inherently distinctive." *Id.* at 211-12. Yet, your letter identifies no <u>*facts*</u> supporting secondary meaning, and absent such proof, the alleged trade dress is not protectable as a matter of law.

Trade dress law likewise does not permit a party to monopolize features that are common, competitively necessary, or functional. As the Supreme Court emphasized in *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, trade dress protection must coexist with the principle that copying unprotectable features is lawful and consistent with competition. 532 U.S. 23, 29 (2001). Where alleged features are ordinary or non-distinctive, as here, they fall outside the ambit of trade dress protection.

<u>Absence of Distinctiveness or Secondary Meaning</u>

Your correspondence does not identify *evidence* that the asserted packaging elements have acquired secondary meaning. Moreover, the color selections by the respective parties are quite different, with diverse colors being used by Bubble, while a consistent color theme is used by 1135. The particular diverse color selections evidence in Bubble's product lines appear largely ubiquitous in the cosmetics industry. See for example, the sampling of colors from different brands in the attached **Exhibit 1**. As *Wal-Mart* makes clear, trade dress cannot be protected merely because a producer was the first (which here is disputed) to use a particular design or color scheme; the relevant inquiry is whether "the primary significance of the design in the minds of consumers is to identify the source of the product rather than the product itself." 529 U.S. at 211 (citation omitted). Various circuits within the U.S. courts of appeal strictly enforce this requirement, particularly where a claim seeks exclusive rights in common packaging aesthetics.

<u>No Likelihood of Confusion Under Applicable U.S. Case Law</u>

Even assuming *arguendo* that a protectable trade dress existed (which it does not), the allegations still fail under the applicable likelihood-of-confusion analysis. For example, in *Board of Supervisors of Louisiana State University v. Smack Apparel Co.*, the Fifth Circuit imposed liability only after finding exceptionally strong evidence of secondary meaning, deliberate copying, and a likelihood of consumer confusion. 550 F.3d 465, 478–88 (5th Cir. 2008). The court's analysis there depended on decades of exclusive use, overwhelming consumer recognition, and record evidence supporting confusion as to sponsorship or affiliation. By contrast, here:

- There is no evidence of actual consumer confusion;
- The alleged trade dress is weak and non-distinctive;
- The parties' *word marks* (Bubble vs. Saint Crewe, and related product line marks (see **Exhibit 2** attached) are plainly different and clearly identify source;
- There is no evidence of intentional copying designed to suggest source, sponsorship, or affiliation.

Applicable case law has repeatedly recognized that where alleged trade dress is weak, distinct source-identifying word marks are prominent, and actual confusion is absent, the likelihood-of-confusion factors weigh decisively against infringement. *See, e.g., Smack Apparel*, 550 F.3d at 487–88.

PD.61578539.4

Alexa T. Blandeburgo
April 21, 2026
Page 3

Lawful Competition Is Not Infringement

Finally, trade dress law does not prohibit competitors from using common colors, shapes, or packaging conventions. As the Supreme Court cautioned, expansive trade dress claims risk granting perpetual monopolies over ordinary product features—an outcome the Lanham Act does not permit. *TrafFix*, 532 U.S. at 29.

For at least these reasons, our client must respectfully decline your demand. Nothing in this correspondence should be construed as a waiver of any rights, claims, remedies, or defenses, all of which are expressly reserved. We trust that, upon review of the controlling legal authority, you will agree that there is no basis for the claims your letter asserts and that your client will reconsider its position and drop the matter.

Sincerely,

**PHELPS DUNBAR, L.L.P.**

R. Andrew Patty II

cc:  Jeff Barbin, Esq.
Attachments

PD.61578539.4

**Exhibit 1**

Bubble Beauty:



Starface:



e.l.f.:



Saint Crewe:



Florence by Mills:



Glossier and Forth Ray Beauty:



Youth to the People:



**EXHIBIT 2**

| BUBBLE Product Name and Category | | SAINT CREWE Product Name (category) and colors |
|---|:---:|---|
| **Level Up** (balancing moisturizer) red and gray blue | | |
| **Cloud Surf** (water cream moisturizer) dark orange and lavender | **vs.** | **Water Whip** (gel cream) Light orange and light blue |
| **Slam Dunk** (hydrating moisturizer) dark orange and aqua green | | |
| **Power Wave** (super hydrating moisturizer) dark orange and dark lavender | | |
| **Float On** (soothing face oil) gray and light purple | **vs.** | **Goji Glow + Go** (facial mist) Same color as above |
| **Soft Swerve** (barrier restore balm) dark blue and aqua blue | **vs.** | **Clean Beam Balmy Dream** (cleansing balm) Same color as above |